**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BARBARA STEWART,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. |
| | * | |
| **GEORGIA HIGHLAND MEDICAL** | * | JURY TRIAL DEMANDED |
| **SVCS, INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

## COMPLAINT

COMES NOW, Plaintiff Barbara Stewart ("Plaintiff" or "Stewart") by and through undersigned counsel and respectfully files this timely Complaint against Defendant GEORGIA HIGHLANDS MEDICAL SERVICES, INC. ("Defendant," "GEORGIA HIGHLANDS MEDICAL" or "GHMS").

## INTRODUCTION

This is a case of illegal race discrimination in the workplace. Stewart was a high-performing  GHMS employee whom GHMS allowed to be subject to constant discrimination for being white by an existing black employee, Tamara Morris. For years, GHMS permitted this racially hostile employee to (i) harass Stewart and other white employees, and (ii) to grossly underperform in her job including willingly frustrating patient care and the workflows of her white co-workers, all despite

repeated complaints. After Plaintiff filed a complaint and notified GHMS of her EEOC filing, she was issued serious disciplinary action for false reasons. With no end in sight, GHMS's racially hostile and intolerable work environment compelled Plaintiff to resign.

1.       Defendants discriminated against Stewart through, inter alia: (a) race discrimination under 42 U.S.C. § 1981; (b) racial discrimination and (c) retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

3.       Pursuant to 28 U.S.C. § 1391(b), venue is proper because Defendant resides and/or conduct business in the Northern District of Georgia, and the unlawful employment practices giving rise to Plaintiff's claims occurred in the judicial district.

4.       Stewart resides in the Northern District of Georgia and is  a citizen of Georgia.

5.       GMHS is a domestic, Georgia non-profit corporation with its principal office located at 475 Tribble Gap Road, Cumming, GA, 30040-2467. GHMS is

licensed to, and does, transact business in Georgia.

6.      GHMS's Bartow Family Health Center office is located at 775 West Avenue, Suite A, Cartersville, GA 30120.

7.      Plaintiff worked at GMHS's Bartow Family Health Center location

8.      At all times relevant to Plaintiff's Complaint, GHMS was Stewart's employer, and Stewart was a GHMS employee within the meaning of Title VII.

9.      At all times material to the Complaint, GMHS had more than 15 employees within the meaning of Title VII.

## ADMINISTRATIVE PROCEEDINGS

10.     Stewart filed an EEOC Charge in 2021 alleging race discrimination and retaliation, and she made allegations before the EEOC which  placed GMHS on fair notice of the claims Stewart brings in this lawsuit.

11.     Stewart filed her EEOC charge within 180 days of the last act of discrimination to which she was subjected, her termination.

12.     Stewart timely filed her EEOC charge.

13.     The EEOC issued a Notice of Right to Sue dated October 29, 2021.

14.     Stewart filed her lawsuit less than 90 days after her Notice of Right to Sue issued.

15.     Stewart's Title VII claims are timely filed.

16.     Stewart has exhausted the administrative prerequisites to filing her Title VII claims.

## FACTUAL ALLEGATIONS

### General Allegations

17.     Based on information and belief, Plaintiff alleges that, at all times mentioned herein, Defendants were acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

18.     Based on information and belief, Plaintiff alleges that, at all times mentioned herein, there may be unknown Defendants who were the agents, servants, and employees, co-venturers, and co-conspirators of Defendants and were, at all times herein mentioned, acting within the course, scope, purpose, consent, knowledge, ratification, and authorization of such agency, employment, joint venture, and conspiracy.

19.     As a direct and proximate result of Defendant's violation of existing law, as herein described, Plaintiff has been compelled to retain the services of counsel and has thereby incurred, and will continue to incur, legal fees and costs.

## STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS

### Defendants' Failed to Prevent and Remedy Discrimination

20.    Defendants' practices and procedures for handling complaints of discrimination do not adequately ensure that complaints are investigated fairly, that prompt remedial action is taken in response to discrimination, that incidents of discrimination are thereby prevented, and that all managers and supervisors are aware of the fact that racial discrimination is taken seriously across all levels of the company.

21.    GHMS fails to provide sufficient monitoring, training, and oversight and has failed to ensure that employees are treated in a nondiscriminatory manner.

22.    Plaintiff, Barbara Stewart, is a white female.

23.    Stewart is an honorably retired U.S. Army veteran and recipient of numerous medals awarded by the U.S. Army and U.S. Navy throughout her service to commend her conduct and achievements while serving our country.

24.    GMHS supervisors and management were aware of Stewart's status as a 90% disabled veteran, 50% of which is mental disability, and 40% physical disability.

25.    Stewart began her employment at GHMS as a Medical Assistant on April 11, 2021.

26.    Stewart's job duties as a Medical assistant included taking patients' vitals and medical history, obtaining necessary medical records, informing patients of medical test or lab results, providing standard referrals to other health care

providers, answering patient questions and the nurse phone line,  and providing tests and treatments such as ear cleanings and breathing treatments

27.    On June 29, 2021, Stewart received her first and only Employee Performance Evaluation ("Performance Evaluation"). The evaluation was conducted by her Supervisor, Tim Preisinger ("Tim").

28.    On the Performance Evaluation, Stewart scored either "Satisfactory," "Very Good," or "Outstanding" across all criteria.

29.    Tim Preisinger praised Stewart's teamwork, communication skills, and work-ethic at length in his written feedback for Stewart's Performance Evaluation. He also characterized Stewart as excelling in her position.

30.    Tim Wrote the following about Stewart's strengths in the written feedback for Stewart's performance evaluation:

> Barbara's greatest strength is her communication, relationship, and work ethic with her provider. Barbara is tasked with working with a very difficult provider. However, she has excelled at this. They communicate very well and make an awesome team. I have been very impressed. Barbara is also willing to take on any task. She gives 100% every single day and goes above and beyond for her provider and the office. Barbara will never refuse a job and enjoys learning. For a new employee, her documentation is also very good and without any formal training. Barbara is now off of her probationary period, and I look forward to watching her excel in her position.

31.    Stewart regularly enjoyed high-praise, compliments, and positive

feedback from coworkers, her provider, and management.

32.     Stewart's first and only disciplinary notice from GMHS was issued on September 20, 2021.

33.     Stewart was treated unfairly and discriminated against by GHMS, its agents, and GMHS employee Tamara Morris.

34.     Tamara Morris was employed by GMHS as a Critical Care Coordinator ("CCC") at all times relevant to Plaintiff's Complaint.

35.     Tamara Morris is a black female.

36.     The duties and responsibilities of a CCC primarily function to facilitate and provide various forms of assistance and support to GMHS' Medical Assistants and Practitioners when called upon. This included but was not limited to pulling and accessing patient records for medical assistants and practitioners.

37.     At all times relevant to Plaintiff's complaint, COVID-19, a deadly and highly contagious virus, was present in Georgia at pandemic levels and classified as a public health emergency. COVID-19 created unprecedented patient volume at GMHS and made urgent the need for swift and efficient patient care from all GMHS employees and support staff.

38.     Prior to Stewart's arrival, numerous employees complained to GMHS supervisors and management about Morris's behavior as creating an intolerable and work environment.

39.    Ms. Morris maintained a functioning and collaborative relationship with fellow-minority employees in the office.

40.    Ms. Morris was incessantly abrasive and intentionally non-compliant towards white medical assistants.

41.    Ms. Morris willfully impeded the workflows of white medical assistants while facilitating the workflows of other minority employees.

42.    Ms. Morris regularly and willfully ignored performing her job duties when asked by white medical assistants, including Stewart but not when asked the same or similar tasks by minority coworkers.

43.    Ms. Morris constantly derided the white medical assistants as needy and made constant hostile remarks under her breath when engaging with white medical assistants but showed no such hostility towards minority employees.

44.    Ms. Morris would intimidate white medical assistants from approaching by glaring at them and muttering under her breath as they walked past. Afterwards, Ms. Morris frequently returned to chatting and laughing with other minority employees. Ms. Morris would change her demeanor dramatically in the presence of GMHS management and supervisors and present herself as an amicable and a team player.

45.    Quinnera Jackson ("Quinn") was hired as Stewart's replacement after Stewart resigned from GMHS. Quinn is a medical assistant currently employed by

GMHS and works as the medical assistant to Lori Millsap at GMHS's Bartow Health Center.

46.    Quinn is a black female.

47.    Tamara has a non-hostile, and amicable working relationship with Quinn, the new black medical assistant, and Tamara does not impede, ignore, or intimidate Quinn as she did and does with the remaining white medical assistants.

48.    Lori Millsap is a Nurse Practitioner at the Bartow Family Health Center and is an employee of GMHS. At all times relevant to the Complaint and prior to Quinn's hiring, Stewart worked as Ms. Millsap's primary medical assistant.

49.    Lori Millsap is a white female.

50.    Sally Francisco ("Sally") is a white female medical assistant and employee of GMHS. At all times relevant to Plaintiff complaint, Sally and Stewart were coworkers. Sally worked as a medical assistant to Dr. Lee Battles at the Bartow Health Center.

51.    Laurie Tynes ("LT") is a white female medical assistant and was an employee of GMHS at all times relevant to the Complaint.

52.    On or about June 10, 2021, Stewart asked Ms. Morris to assist she and Ms. Millsap retrieving patient records, Ms. Morris mocked Stewart and Ms. Millsap, calling Ms. Millsap Stewart's "mama" and that the pair asked for everything. Stewart responded by telling Ms. Morris that Stewart did not have the ability access

to ER records like Ms. Morris did and accessing patient records was Ms. Morris'

job. Ms. Morris then turned to Michelle Brown, another white woman who works

for Quest Diagnostics employee who works in the office and told Ms. Brown to "go

and get your white girl."

53.     Michelle Brown is a white female.

54.     Tina Orrick was the GMHS office manager at Bartow Family Health

Center at the Time of the "white girl" comment.

55.     Tina Orrick is a white female.

56.     The day following the "white girl" comment, on or about June 11,

2021, Sally and Stewart informed Tim Preisinger that they wanted to meet with him

(Tim), Ms. Orrick, and HR to discuss Ms. Morris' behavior, now colored by the

racially charged comment. In response, Tim Preisinger then informed Stewart that

there was not an HR department in place at that time. Tim agreed meeting was in

order.

57.     Nothing was done and on or about June 18, 2021, Stewart emailed Tim

to re-request a meeting and demanded someone with equal or greater authority to an

HR representative be present.

58.     On or about June 21, 2021, Tina Orrick informed Stewart that Tim

refused to have the CEO or COO of GMHS present at the meeting. Stewart, Sally,

and LT (the white medical assistants) then met with Tina Orrick. Ms. Orrick assured

Stewart that she would talk with Ms. Morris and "see how that goes."

59.     On or about June 23, 2021, Stewart finally met with Tim Preisinger as requested weeks earlier. Tim Preisinger, Tina Orrick, Sally Francisco, Laurie Tynes, and Stewart were all present. to complain about Tamara's behavior and the racially charged remark. Stewart stated she wanted to report the hostile work environment caused by Tamara and that they wanted a record be made to reflected the occurrence of this meeting and its purpose. Sally and LT then recalled the numerous complaints about Tamara's behavior by themselves and others over the years and Tamara's hostile behavior had yet to improve or be adequately addressed. Ms. Orrick responded by yelling at Stewart and her coworkers.

60.     On or about June 29, 2020, less than one week after the meeting with Tim Preisinger, Tim gave Stewart the glowing Employee Performance Evaluation referenced in ¶ ¶ 27-30, above. In the Evaluation, Tim specifically commended Stewart's teamwork and communication skills. The only areas listed for improvement were in the realm of administering specific medical procedures.

61.     The next day, on or about June 30, 2021m, Tim told Stewart she had spoken with Ms. Morris and that Stewart could file a grievance if she wished, but he preferred she did not.

62.     On about July 2, 2021, Stewart received a call from Kristen Lindsey ("Lindsey") who stated she was GMHS Human Resources.

63.     An HR department was, in fact, in place during the time Stewart was demanding to meet with Tim and HR in the weeks prior.

64.     Kirsten Lindsey was employed by GMHS and working remotely as Human Resources for GMHS during the dates of June 11, 2021 and June 30, 2021.

65.     Lindsey stated there was no record of Stewart reporting hostile or discrimination to Tim or management.

66.     A step-by-step procedure is not properly outlined in the GMHS employee handbook and Stewart asked Lindsey via email how to proceed with filing a formal grievance on or about July 6, 2021. On or about July 8, 2021, Lindsey replied that she was preoccupied with payroll but would circle back.

67.     Stewart emailed Lindsey again on or about July 14, 2021 after hearing nothing back. Stewart wrote her email that she did not feel her complaints were being taken seriously.

68.     Stewart received no response from HR until on or about July 20, 2021 when Stewart was contacted via email by Tracie Webb ("Webb"), who introduced herself as the new HR representative for GMHS. Webb provided a document for Stewart to fill out and begin the process.

69.     Webb also stated that she planned to conduct an investigation and interview employees pursuant to the grievance.

70.     Stewart again asked for a layout or copy of the formal grievance

procedure. None was given.

71.   Stewart and Francisco both filed a formal grievance.

72.   On or about June 23, 2021 Ms. Morris' behavior showed no change, and Stewart asked to meet privately with Tina Orrick. In the meeting, Stewart begged Ms. Orrick to speak with Morris about her behavior and stated that she did not believe Ms. Orrick was taking the her seriously that she did not appreciate how serious the problem was.

73.   Stewart suggested Ms. Morris receive Equal Employment Opportunity training. In response, Ms. Orrick laughed and dismissed the suggestion.

74.   On or about July 29, 2021 Stewart was interviewed by Tracie Webb as part of the investigation for Stewart's complaint.

75.   During Stewart's interview, she informed Webb that she intended to file a charge with the EEOC due to the lack of progress on this issue and Tina Orrick's refusal to take Ms. Morris' conduct seriously.

76.   Ms. Orrick resigned from GMHS on or about August 2021.

77.   On or around Aug. 11, GMHS CEO Todd Shifflet informed GMHS staff that a secondary "third party" investigation was being undertaken by Southern Health Lawyers, LLC regarding the grievances.

78.   Stewart was never interviewed for or by the third-party investigation.

79.   On September 20, 2021, Tracie Webb, Tim Preisinger, and GMHS

CEO, Todd Shifflet as a group met Ms. Morris, Sally, and Stewart, individually, to go over the results of the investigations into the Grievance filed by Stewart and Sally.

80.     During Stewart's grievance investigation results meeting, Stewart was informed she was being placed on Progressive Disciplinary Action ("PDA") (the Grievance investigation meeting hereafter, the "PDA Meeting").

81.     The PDA Letter explained GMHS's proffered reasons for placing Stewart on PDA, and that non-compliance with the Progressive Disciplinary Action had serious consequences including termination. The letter highlighted Stewart would be terminated if she failed to follow the PDA's resultant 30-day plan.

82.     Stewart's PDA Form and PDA Letter claim the following three violations of the GHMA Policy Manual and Standards of Conduct by Stewart: (1) "Work disruption," (2) "Lack of teamwork", and (3) "Provoking negativity in the workplace."

83.     The PDA form acknowledges there was no prior discussion with Stewart regarding any supposed misbehavior or misconduct, written or oral, prior to Stewart being placed on PDA.

## **COUNT 1**

## **Intentional Discrimination Violating 42 U.S.C. § 1981**

84.    At all times material to Plaintiff's Complaint, Stewart and Defendant were parties to an oral contract of employment under which, *inter  alia*, Stewart worked for Defendant and Defendant compensated Stewart for her work.

85.    Stewart performed her contractual obligations by, *inter alia*, working for Defendant.

86.    Under 42 U.S.C. § 1981, it is unlawful for Defendant to discriminate against Stewart based on her race in the making or enforcement of contracts with her.

87.    42 U.S.C. § 1981's prohibition  on race discrimination in the making or enforcing of contracts applies to Stewart's employment contract with Defendant.

88.    The above-pled facts constitute race discrimination in violation of 42 U.S.C. § 1981 because Defendant discriminated against Stewart by constructively discharging her.

89.    GMHS intentionally favored the interests of non-minority employees.

90.    Defendant's intentionally discriminatory actions caused Stewart to suffer lost compensation and other benefits of employment, emotional distress exacerbated by her diagnosed mental conditions, inconvenience, humiliation, and other indignities.

91.    Stewart is entitled to damages, lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorneys' fees, and costs

of litigation pursuant to 42 U.S.C. § 1988, and all other relief recoverable under 42 U.S.C. § 1981.

92.   Defendant acted with malice toward Stewart, authorizing an award of punitive damages.

93.   Additionally and in the alternative, Defendant acted with reckless disregard for Stewart's federally protected rights, authorizing an award of punitive damages.

## COUNT II

## Race Discrimination Violating Title VII

94.   Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

95.   At all times material to the Complaint, Stewart was Defendant's employee, and Defendant was Stewart's employer, within the meaning of Title VII.

96.   Defendant violated Stewart's rights by issuing serious disciplinary notice for false reasons and threatening to terminate her if she did not immediately show improvement within 30 days.

97.   Defendant undertook the above-pled conduct, including disciplinary notice to Stewart, because of Stewart's race in violation of Title VII's anti-discrimination provisions.

98.   Defendant's conduct caused Stewart to resign her employment due to

intolerable working conditions suffer lost compensation and other benefits of employment, emotional distress exacerbated by her diagnosed mental conditions, inconvenience, humiliation, and other indignities.

99.   Defendant acted with malice toward Stewart, authorizing an award of punitive damages.

100.   Defendant acted with malice toward Stewart, authorizing an award of punitive damages.

## COUNT III

## Hostile Work Environment Violating Title VII

101.   Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

102.   Defendant failed to maintain a tolerable work environment by failing to take effective corrective action against Tamara Morris's racially-motivated malicious non-compliance and racial discrimination, including after GMHS was made aware that Tamara Morris was openly hostile Stewart and the other white medical assistants but not other office minorities.

103.   GMHS hired Stewart into a work environment GMHS knew or had reason to know was intolerably hostile and at odds with the implied terms and conditions of Stewart's employment in place at the time of hiring. No disclosure or warning of such an environment was made to Plaintiff upon hiring and plaintiff did

not agree impliedly or expressly to work in such an environment.

104.   Tamara Morris' intimidated Stewart and other white non-supervisory co-workers through constant and discriminatory abrasiveness towards the white Medical Assistants.

105.   The discrimination and harassment that Plaintiff was subjected to in the hands of Defendant's and their agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, and humiliating.

106.   Such behavior had the effect of creating a hostile, intolerable, and intimidating work environment.

107.   Such continuing and persistent discrimination and harassment adversely affected the terms and conditions of Plaintiff's employment.

108.   Defendants' acts and failures to act were motivated by evil and intent and in reckless disregard and callous indifference to Stewart's federally protected rights.

109.   Plaintiff was constructively discharged as a result of Defendant's failure to take effective corrective action towards the racially hostile and intolerable work environment of GMHS.

110.   As a direct and proximate result of the above unlawful employment practices, Stewart has suffered the indignity of discrimination, the invasion of her right to be free from discrimination, and great humiliation, which manifested in

physical illness, heart palpitations, and emotional distress.

111.   Stewart's physical and mental distresses were exacerbated by medical and mental conditions known to GMHS.

112.   GMHS's failure to control and remedy discriminatory non-compliance and intimidating behavior of the Critical Care Coordinator unfairly placed a disproportionate workload and burden upon Plaintiff that forced her to work countless hours of overtime away from her spouse.

113.   As a direct and proximate result of the said unlawful employment practices, Stewart suffered extreme mental anguish, outrage, severe anxiety about her future and her ability to support herself, harm to her employability and earning capacity, painful embarrassment before her coworkers, damage to her professional reputation, loss of enjoyment in the ordinary pleasures of life, and the strain of the added workload and time way from home contributed to Stewart's divorce from her spouse.

## **COUNT IV**

### **Retaliation Violation of Title VII**

114.   Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

115.   As herein alleged, the Defendants by and through their officers,

managing agents and or its supervisors illegally retaliated against Plaintiff by placing her on Progressive Disciplinary Action and threat of termination in response to Plaintiff engaging in protected employment activities. Defendant also caused Plaintiff to be constructively discharged in retaliation for her complaints of discrimination.

116.   On information and belief, and based thereon, Plaintiff alleges GMHS provided false reasons for placing her on PDA. The PDA claims are directly contrary to the Performance Evaluation she only recently received from her supervisor and directly contradict the constant glowing feedback she received from office management, supervisors, and colleagues.

117.   Defendant acted with malice toward Stewart, authorizing an award of punitive damages.

118.   Defendant acted with malice toward Stewart, authorizing an award of punitive damages.

[page break – prayer for relief follows]

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and the following relief:

(a) Declaratory judgment that Defendant violated Plaintiff's rights under the federal statutes listed above;

(b) A permanent injunction against Defendant enjoining Defendant from further violations of the federal statutes listed above;

(c) Full back pay from the date of Plaintiff's constructive termination, including all raises to which Plaintiff would have been entitled but for her wrongful constructive termination, and all fringe and pension benefits of employment, with prejudgment interest theron;

(d) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's severed emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(e) Punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendant for its conduct towards Plaintiff and to deter Defendant from similar conduct in the future;

(f) Reasonable attorneys' fees and costs; and

(g) Other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted January 27, 2022

s/ James E. Voyles
Voyles Law Firm
Georgia Bar No. 729016

and

s/ John F. Meyers
JMeyers Group LLC
Georgia Bar No. 503692

Voyles Law Firm
JMeyers Group LLC
1755 The Exchange SE, # 339
Atlanta, Georgia 30339
Phone: (404) 597-1275